Filed 11/27/13  P. v. Montelongo CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>ROBERT CANO MONTELONGO,<br><br>Defendant and Appellant. | D063233<br><br><br><br>(Super. Ct. No. SCN301334) |

APPEAL from a judgment and order of the Superior Court of San Diego County, Harry M. Elias, Judge.  Affirmed.

Sean F. Leslie for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Steve Oetting and Andrew Mestman, Deputy Attorneys General, for Plaintiff and Respondent.

In exchange for what the guilty plea form indicated was a stipulated prison sentence of 15 years to life plus 10 years, Robert Cano Montelongo pleaded guilty to the murder of Stephen Board in violation of Penal Code section 187, subdivision (a)

(undesignated statutory references will be to the Penal Code), and admitted a gun use enhancement allegation (§ 12022.53, subd. (b)).[1]

After new counsel was appointed to represent him, Montelongo filed an opposed motion to withdraw both his guilty plea and his admission of the gun use allegation based on his claim that his former counsel hurried him into accepting the plea bargain and, as a consequence, he mistakenly believed he would be sentenced to a state prison term of 15 years, not a life term. Following a hearing, the court denied the motion. The court then sentenced Montelongo to a state prison term of 15 years to life for the murder conviction plus 10 years for the gun use enhancement.

On appeal Montelongo challenges the order denying his motion to withdraw his guilty plea and his admission of the gun use allegation, contending (1) the court erred in denying his motion because his plea was involuntary and the product of duress, and (2) his former attorney rendered prejudicially ineffective assistance of counsel. For reasons we shall explain, we reject these contentions and affirm the order and judgment.

---

[1] One of Montelongo's two codefendants, Benjamin Soria, pleaded guilty to one count of voluntary manslaughter; and admitted allegations that he committed the crime to further criminal conduct by gang members, and that he was vicariously armed with a firearm. He was sentenced to a state prison term of seven years eight months. Montelongo's other codefendant, Eulise Solano, pleaded guilty to the same charges and agreed to testify against Montelongo.

FACTUAL BACKGROUND[2]

On January 2, 2012, in the late afternoon, police were called to an Oceanside house where they found Stephen Board, a documented member of the Crook Mob Gangster Crips gang, dead from a single gunshot to the back of his head. The area where Board was killed was known to be claimed by Varrio Mesa Locos, a Hispanic gang who had a long-standing rivalry with Black gang members.

Witnesses reported observing four "Mexicans" walking towards Board and asking him, "What's up fool?" Board yelled, "Oh shit he got a pistol," and then ran in an attempt to escape. Board was then shot in the back of his head.

A police investigation identified Montelongo, Solano, and Soria─all members of the Varrio Mesa Locos gang as suspects in the shooting. Following his arrest for a probation violation, Montelongo admitted he saw the shooting, but claimed he was not involved. During a police interview, Soria indicated Montelongo was the shooter.

DISCUSSION

Montelongo claims the court erred in denying his motion to withdraw his guilty plea and his admission of the gun use allegation because his plea was involuntary and the product of duress. He also claims his former attorney rendered ineffective assistance of counsel because the attorney led him "to believe that if he took the deal he would only serve a maximum of [15] years," counsel "urgent[ly] insiste[d]" that he accept the plea

---

[2]    The following brief summary of the facts is taken from the probation officer's report because Montelongo entered his guilty plea during trial.

offer, and "the hastiness of the proceedings resulted in a coerced plea of guilty."  We reject these claims.

A.  *Procedural Background*

1.  *Montelongo's guilty plea*

On August 15, 2012, during trial, Montelongo withdrew his not guilty plea, pleaded guilty to one count of murder as charged in count 1, and admitted a gun use enhancement allegation (§ 12022.53, subd. (b)).  With the assistance of his appointed counsel, Ricardo D. Garcia, Montelongo executed a guilty plea form, which indicated he had not been induced to enter the plea by any promise or representation, except:  "Stip 15-life plus 10 years."  With his initials, Montelongo acknowledged he understood the "maximum punishment" he could receive as result of his plea was "25 years imprisonment or imprisonment plus a term of mandatory supervision."

In court, Montelongo indicated he wished to plead guilty to count 1 and the gun use allegation.  He admitted he signed and initialed the plea form after discussing the form with his attorney.  He also indicated he had no questions about the contents of the form, and Garcia had answered any questions he had in going over the form.  The following exchange occurred among the court, Montelongo, and Montelongo's counsel, Garcia:

> "[The Court:]  Paragraphs one and two comprise the plea agreement, which indicates you're going to enter a plea to count [1,] a violation of Penal Code section 187.  You're going to admit an allegation of [section] 12022.53[, subdivision] (b) and *the stipulated sentence is 15 years to life plus ten years*; is that your full understanding of the plea agreement?

4

"[Montelongo:]  Yes.

"[The Court:]  Has anyone made any other promise or agreement with you other than what I just read to you?

"[Montelongo:]  No, sir.  [¶] . . .

"[The Court:]  I'm obligated by law to tell you the maximum possible consequences.  The plea agreement we know is *15 plus ten.* The maximum, technically under the law, can be higher. . . .  [¶] . . . [¶] . . . Do you understand all of that?

"[Montelongo:]  Yes.

"[The Court:]  Have you had sufficient time to discuss this case with your attorney and make him aware of everything you know about the case?

"[Montelongo:]  Yes.

"[The Court:]  Mr. Garcia, did you advise your client of all his rights, possible defenses to the charges, the consequences of his plea and the admission?

"[Garcia:]  I have.

"[The Court:]  Do you join in the waiver of the rights and the entry of the plea?

"[Garcia:]  One moment, Your Honor.

"[The Court:]  Okay.

"[Garcia:]  Yes, Your Honor, I do."  (Italics added.)

Montelongo indicated he had not been not threatened or coerced into pleading guilty and he was pleading guilty freely and voluntarily because he was guilty.  He also indicated he had no questions about the form or anything discussed in court.

5

Montelongo then pleaded guilty to count 1 and admitted the firearm allegation. The court accepted the plea and admission, finding Montelongo understood the nature of the proceedings and the consequences of his plea.

The following month, Garcia was relieved as Montelongo's counsel and Sean Leslie was substituted as his new counsel of record.

2. *Montelongo's motion to withdraw his plea*

Montelongo thereafter filed a motion to withdraw his guilty plea. In his motion, Montelongo asserted that when he pleaded guilty and admitted the enhancement allegation, he did not understand that he was pleading to a prison term of 15 years to life, and "would not have done so if properly advised." Rather, he "believed he was accepting a 15 year sentence and would be released from custody when he was 35 years old." Montelongo also claimed he did not have enough time to consider the prosecutor's plea offer because Garcia told him to "hurry up" and that he "didn't have much time."

The prosecutor's written opposition argued that Montelongo's plea was not the result of duress; it was voluntarily and freely made.

At the hearing on his motion during the sentencing proceeding, Montelongo testified that from the time of his arraignment until his trial, he only saw his attorney, Garcia, three times. Montelongo stated that Garcia told him during trial that he only had "a matter of minutes" to accept a plea deal and he should take the deal because he would be "out" when he was 35 years old. Prior to that day, the prosecutor's offer was 25 years to life. According to Montelongo, when Garcia spoke to him about the change of plea, he said he requested some time to think about it and discuss the offer with his family.

6

Garcia told him he had to hurry up, and he was not allowed to speak to his parents before pleading guilty. Montelongo testified he "felt overwhelmed and didn't know what to do." He stated that Garcia only spent "a minute or two" discussing the plea form with him and indicated he did not know what the word "Stip" referred to.

Montelongo also stated that while the judge was going through the plea form with him, he was relying on his lawyer, who would nod and say, "Yes." He indicated that he did not understand what the judge meant when he said "Stip to 15 years to life." Montelongo claimed his lawyer said he would be out of prison in 15 years, and this was the only reason he pleaded guilty. He indicated he would not have pleaded guilty to the murder count had he known there was a "life charge or a life consequence."

During cross-examination, Montelongo indicated he had never heard anyone use the term "stip" during the eight months he was in jail. He acknowledged that he initialed the plea form; that the form stated 15 years to life, plus 10 years; that the form stated he understood the maximum punishment was 25 years imprisonment plus a term of mandatory supervision; and that he could get lifetime parole. Montelongo further acknowledged he said "[y]es" when the judge asked him whether he understood that the stipulated sentence was 15 years to life, plus 10 years.

The prosecution called Montelongo's former counsel, Garcia, to testify. Garcia testified that he spent about 20 hours discussing the case with Montelongo before trial. He indicated that he explained the settlement offers to Montelongo and that he also explained in plain English the difference between an indeterminate life term and a determinate term that is "a straight number of years." Garcia stated he discussed with

7

Montelongo what a "life" term meant on three or four occasions. Montelongo never communicated any difficulty or confusion understanding this distinction.

Garcia also testified that prior to trial, the prosecutor had offered to settle the matter for a sentence of 15 years to life, plus 10 years, which he had explained to Montelongo, who rejected the offer. Garcia indicated that matters arose during trial which he believed negatively impacted his case, so he discussed resolving the matter with the district attorney's office. He conveyed the offer to Montelongo, who never communicated any difficulty in understanding the possible sentence. He explained the concept of a stipulated sentence and a "stip" to Montelongo, who appeared to understand.

Garcia further testified he never told Montelongo he would be out of prison after 15 years when he was 35 years old. He did tell Montelongo the deal needed to be done immediately. They went over the change of plea form together and he reviewed the entire form with Montelongo "in detail." Montelongo did not communicate any failure to understand nor did he indicate anything that would have led Garcia to believe that Montelongo thought he would be getting out of prison in 15 years.

a. *Ruling*

After hearing the testimony and arguments of counsel, the court denied Montelongo's motion. The court found there was "no doubt" that Montelongo knew from the outset that he was facing a life sentence. The court noted that during the discussion of the plea agreement he had asked Montelongo whether he had any questions, and Montelongo said, "No." Further, when Montelongo was asked whether he understood the

8

plea agreement, which was a stipulated sentence of 15 years to life plus 10 years, Montelongo responded, "Yes." The court then stated:

> "There's no doubt in my mind at the time he entered the plea he knew that it was a life term case.
>
> "The implication that Mr. Garcia forced him or coerced him into the plea, rushed him into the plea, I find not to be credible. One, the incidents that gave rise to the People [being] willing to extend an offer, as indicated to by both Mr. Garcia and by the minutes of the court, show those events occurred prior to the noon break. In fact, we recessed the jury early, at 11:47 a.m.
>
> "So that when during the plea itself, at page five, Mr. Montelongo was asked, have you had sufficient time to discuss this case with your attorney and make him aware of everything you know about the case? He responded yes. And finally, which is at least part of the change of plea process that I use, I specifically asked him, starting at page 28—on line 28, excuse me, on page five, and going through to page six: Mr. Montelongo, has anyone threatened you or threatened anyone near or dear to you to try to force you or coerce you to plead guilty? He said no.
>
> "And then, before I actually took the plea, I finished up with, do you have any questions at all about anything on the form or anything we discussed here in court? He responded no.
>
> "I find his responses then to be credible. Therefore, the motion to withdraw the plea is hereby denied."

The court then sentenced Montelongo pursuant to the plea agreement to a state prison term of 15 years to life plus 10 years. Montelongo's appeal followed.

B. *Applicable Legal Principles*

Section 1018 provides that, "[o]n application of the defendant at any time before judgment . . . , the court may . . . for a good cause shown, permit the plea of guilty to be

9

withdrawn and a plea of not guilty substituted. . . . This section shall be liberally construed to effect these objects and to promote justice."

In *People v. Weaver* (2004) 118 Cal.App.4th 131, 145-146, this court explained the general legal principles that apply to a defendant's motion to withdraw a guilty plea:

> "A defendant who seeks to withdraw his guilty plea may do so before judgment has been entered upon a showing of good cause. [Citations.] . . . 'Good cause must be shown for such a withdrawal, based on clear and convincing evidence. [Citation.]' [Citations.] 'To establish good cause, it must be shown that defendant was operating under mistake, ignorance, or any other factor overcoming the exercise of his free judgment. [Citations.] Other factors overcoming defendant's free judgment include inadvertence, fraud or duress. [Citations.]' [Citation.] 'The burden is on the defendant to present clear and convincing evidence the ends of justice would be subserved by permitting a change of plea to not guilty.' [Citation.]
>
> "'When a defendant is represented by counsel, the grant or denial of an application to withdraw a plea is purely within the discretion of the trial court after consideration of all factors necessary to bring about a just result. [Citations.] On appeal, the trial court's decision will be upheld unless there is a clear showing of abuse of discretion. [Citations.]' [Citation.] 'Guilty pleas resulting from a bargain should not be set aside lightly and finality of proceedings should be encouraged.'"

"A plea may not be withdrawn simply because the defendant has changed his mind." (*People v. Nance* (1991) 1 Cal.App.4th 1453, 1456.) "The fact that [a defendant] may have been persuaded, or was reluctant, to accept the plea is not sufficient to warrant the plea being withdrawn." (*People v. Ravaux* (2006) 142 Cal.App.4th 914, 919, citing *People v. Urfer* (1979) 94 Cal.App.3d 887, 892.)

On appeal, we will not reverse a trial court's decision to grant or deny a defendant's motion to withdraw a guilty plea unless an abuse of the court's discretion is

10

clearly shown.  (*People v. Superior Court* (*Giron*) (1974) 11 Cal.3d 793, 796; People v. *Ravaux, supra,* 142 Cal.App.4th at p. 917.)  We "must adopt the trial court's factual findings if substantial evidence supports them."  (*People v. Fairbank* (1997) 16 Cal.4th 1223, 1254.)  A trial court abuses its discretion if it "exercises discretion in an arbitrary, capricious or patently absurd manner resulting in a manifest miscarriage of justice." (*People v. Shaw* (1998) 64 Cal.App.4th 492, 496.)

A criminal defendant is constitutionally entitled to effective assistance of counsel. (U.S. Const., 6th Amend.; Cal. Const., art. I, § 15; *Strickland v. Washington* (1984) 466 U.S. 668, 684-685; *People v. Pope* (1979) 23 Cal.3d 412, 422, disapproved on another ground by *People v. Berryman* (1993) 6 Cal.4th 1048, 1081, fn. 10.)

To show denial of the right to effective assistance of counsel, a defendant must show (1) his counsel's performance was below an objective standard of reasonableness under prevailing professional norms, and (2) the deficient performance prejudiced the defendant.  (*Strickland v. Washington, supra,* 466 U.S. at pp. 687, 691-692; *People v. Ledesma* (1987) 43 Cal.3d 171, 216-217; *People v. Pope, supra,* 23 Cal.3d at p. 425.)  To show prejudice, a defendant must show a reasonable probability that he would have received a more favorable result had his counsel's performance not been deficient. (*Strickland,* at pp. 693-694; *Ledesma,* at pp. 217-218.)  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  (*Strickland, supra,* 466 U.S. at p. 694.)

C. *Analysis*

We first reject Montelongo's claim that his plea was involuntary and the product of duress, and, thus, that the court abused its discretion in denying his motion to withdraw his guilty plea and his admission of the gun use allegation. We conclude substantial evidence supports the court's implied factual determination that when Montelongo entered his plea, he was not operating under mistake, ignorance, duress, or "'any other factor overcoming the free exercise of his free judgment'" (*People v. Weaver*, *supra*, 118 Cal.App.4th at pp. 145-146); and, thus, Montelongo has failed to meet his burden of making a clear showing of abuse of discretion. Both in the change of plea form and orally at the hearing on his motion in response to the court's questions, Montelongo indicated he understood that, in exchange for his plea, he would be sentenced to a prison term of 15 years to life plus 10 years. He also indicated in his testimony that he had not been not threatened or coerced into pleading guilty and he was pleading guilty freely and voluntarily because he was guilty.

In his testimony, Montelongo's former counsel Garcia stated that he went over the change of plea form with Montelongo and reviewed the entire form with him "in detail." Garcia further testified that although he did tell Montelongo the plea deal needed to be done immediately, he never told Montelongo he would be out of prison after 15 years when he was 35 years old.

After reviewing the totality of the circumstances, we conclude the court acted well within its discretion and properly denied Montelongo's motion to withdraw his guilty plea and admission of the gun use enhancement allegation.

12

We also reject Montelongo's related claim that Garcia rendered ineffective assistance of counsel by leading him "to believe that if he took the deal he would only serve a maximum of [15] years," and by "urgent[ly] insist[ing]" that he accept the plea offer in such a way that "the hastiness of the proceedings resulted in a coerced plea of guilty." Substantial evidence establishes that Garcia spent about 20 hours discussing the case with Montelongo prior to trial. Garcia indicated in his testimony that he conveyed all settlement offers to Montelongo, and explained to him the difference between indeterminate and determinate terms. Garcia testified that prior to trial, the prosecutor had offered to settle the matter for a sentence of 15 years to life, plus 10 years, and he had explained this offer to Montelongo, who rejected it. Garcia also stated that on three or four occasions he discussed with Montelongo what a "life" term meant; and he also explained the concept of a stipulated sentence and a "stip" to Montelongo, who appeared to understand. As already discussed, Garcia testified he never told Montelongo he would be out of prison after 15 years when he was 35 years old.

Based on the foregoing record, we conclude Montelongo has failed to meet his burden of establishing Garcia's performance was deficient. (See *Strickland v. Washington, supra,* 466 U.S. at p. 687; *People v. Ledesma, supra*, 43 Cal.3d at p. 216.)

For all of the foregoing reasons, we affirm the judgment and the order denying Montelongo's motion.

DISPOSITION

The judgment and order are affirmed.

NARES, J.

WE CONCUR:

McCONNELL, P. J.

HALLER, J.

14