Filed 1/30/14  P. v. Ojeda CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

|  |  |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>CARLOS OJEDA,<br><br>      Defendant and Appellant. | C071243<br><br>(Super. Ct. No. 08F04262) |

A jury convicted defendant Carlos Ojeda of second degree murder (Pen. Code, § 187, subd. (a))[1] and found that he used a firearm in the commission of the offense (§ 12022.53, subds. (b), (c) & (d)).  The trial court sentenced defendant to 40 years to life in prison.

---

[1] Undesignated statutory references are to the Penal Code.

1

Defendant now contends (1) the trial court erred in instructing the jury with CALCRIM No. 372 [defendant's flight], because defendant did not hide, but merely left the scene of the shooting and went home; (2) the trial court failed in its sua sponte duty to instruct the jury with CALCRIM No. 358 [evidence of defendant's statements]; and (3) defendant is entitled to an additional day of presentence custody credit.

Defendant's contentions lack merit. We will affirm the judgment.

BACKGROUND

Defendant's brother was murdered in Dixon in 2005. At the time, defendant was living in Sacramento with Manuel Lopez and Manuel's wife, Mayra Martinez.[2] Defendant and Manuel returned the brother's body to Mexico. When defendant returned to California he started acting strangely. Defendant laughed inappropriately and distrusted everyone, saying that everybody wanted to kill them, that the food might be poisoned and that his mother in Mexico hired someone to kill him.

Defendant shared a room at Manuel's home with Javier Cerna. In May 2008, Javier drove defendant to the store. Surveillance cameras from a deli and an adjacent laundromat showed Javier's car pulling into the parking lot at 8:47 p.m., Javier entering the deli and purchasing what appeared to be a beverage, and then driving away from the deli at 8:51 p.m.

About 10 minutes after Javier and defendant left Manuel's home, Manuel and another man, Felipe Garcia, heard gunshots and then a car crash. Manuel and Felipe walked to the scene of the crash. They saw that Javier's car had run into a parked car, and that Javier was in the driver's seat, bleeding. According to Felipe, defendant had just exited the car, carrying a paper bag. Defendant ran by Felipe and Manuel and said

---

[2] We refer to certain individuals by their first names for clarity.

nothing to them even though Manuel asked him what had happened. Defendant went to Manuel's residence.

Dr. Mark Super responded to the scene of the shooting. Javier was pronounced dead at the scene. Dr. Super determined that Javier had two gunshot wounds, one fired from several inches to a few feet away.

Around 10:00 p.m. that evening, authorities found gunshot residue on defendant's hands. No weapon was found.

Sherman Watson, a firearms expert, was called as a witness by defendant. Watson examined the evidence gathered in the shooting and concluded the shooter was a marksman who had fired the fatal shots from outside Javier's car. Criminalist Philip Hess, called by the prosecution, testified he reviewed Watson's report, heard Watson's testimony, and concluded that Watson drew conclusions that were not supported by the evidence.

I

Defendant contends the trial court prejudicially erred in instructing the jury with CALCRIM No. 372 [defendant's flight], because defendant did not hide, but merely left the scene of the shooting and went home.

CALCRIM No. 372, as given, provided: "If the Defendant fled immediately after the crime was committed, that conduct may show that he was aware of his guilt. If you conclude that the Defendant fled, it is up to you to decide the meaning and importance of that conduct. However, evidence of the Defendant's flight cannot prove guilt by itself."

" 'In general, a flight instruction "is proper where the evidence shows that the defendant departed the crime scene under circumstances suggesting that his movement was motivated by a consciousness of guilt." ' [Citations.] Evidence that a defendant left the scene is not alone sufficient; instead, the circumstances of departure must suggest 'a purpose to avoid being observed or arrested.' [Citations.] To obtain the instruction, the prosecution need not prove the defendant in fact fled, i.e., departed the scene to avoid

3

arrest, only that a jury *could* find the defendant fled and permissibly infer a consciousness of guilt from the evidence. [Citation.]." (*People v. Bonilla* (2007) 41 Cal.4th 313, 328, italics in original.)

Defendant argues there was insufficient evidence from which a jury could find that his purpose in running from the scene was to " 'avoid being observed or arrested' " because he simply ran "to his own house," "a place one logically would expect him to be and not one where a person would go to avoid detection." But there is evidence from which the jury could infer defendant left the scene to avoid being arrested. Felipe observed defendant when defendant had just exited Javier's car. Defendant quickly left the scene of the crash and shooting, carrying a bag. Defendant did not stop to speak to either Felipe or Manuel, even though Manuel asked defendant what had happened. Instead, defendant ran by them and into Manuel's residence. The firearm used in the shooting was never found, despite a search at the crash scene and in Manuel's residence.

From this evidence, the jury could reasonably infer that defendant immediately ran from the scene of the shooting to avoid explaining the circumstances to Manuel and Felipe and to hide the weapon. Contrary to defendant's claim, his conduct in immediately leaving the scene of the shooting and car crash, refusing to help Javier, declining to answer Manuel's question, and declining to wait for police to arrive, was not what one would logically expect from a person who was not responsible for the crime.

Substantial evidence supported instructing the jury with CALCRIM No. 372.

## II

In addition, defendant contends the trial court prejudicially erred when it failed in its sua sponte duty to instruct the jury with CALCRIM No. 358 [evidence of defendant's statements].[3]

---

[3] CALCRIM No. 358 provides: "You have heard evidence that the defendant made [an] oral or written statement[s] (before the trial/while the court was not in session). You

"It is well established that the trial court must instruct the jury on its own motion that evidence of a defendant's unrecorded, out-of-court oral admissions should be viewed with caution. [Citations.] The purpose of the cautionary language . . . is to assist the jury in determining whether the defendant ever made the admissions. [Citations.]." (*People v. McKinnon* (2011) 52 Cal.4th 610, 679.)

Defendant argues the following out-of-court statements required the cautionary instruction: Manuel's testimony that defendant "started telling me that my wife was trying to bewitch me," that "everybody wanted to kill us," that "[h]e didn't want to [eat the food]," that "his [own] mother had hired somebody to kill him," and that on the night of the shooting Mayra heard defendant ask Javier to drive him to the store. Defendant says the first four statements show that he "may have become somewhat mentally unhinged to the point where he was paranoid with respect to members of his own household," i.e., provide a motive for the shooting. And defendant's asking Javier to take him to the store could be viewed as "evidence that [defendant] intended to ambush" Javier along the way.

The Attorney General responds that because "[a] cautionary instruction only applies to a defendant's inculpatory statements" and the referenced comments "[do] not implicate him in the murder of Javier Cerna," no cautionary instruction was required.

In *People v. Clark* (2011) 52 Cal.4th 856, the defendant was convicted of sexually assaulting one young girl, among other things. (*Id.* at pp. 871-872.) On appeal, the defendant argued the trial court erred by not instructing the jury to view with caution evidence of his preoffense statement of intent, plan, motive, or design. (*Id.* at p. 956.) As

---

must decide whether the defendant made any (such/of these) statement[s], in whole or in part. If you decide that the defendant made such [a] statement[s], consider the statement[s], along with all the other evidence, in reaching your verdict. It is up to you to decide how much importance to give to the statement[s]. [¶] [Consider with caution any statement made by (the/a) defendant tending to show (his/her) guilt unless the statement was written or otherwise recorded.]"

examples of such preoffense statements, the Supreme Court cited testimony by the victim's sister that the defendant had asked the sister and the victim whether they were virgins and suggested they consider having a more experienced boyfriend like him, and testimony by the defendant's friend that six months before the crimes, when the friend warned defendant to stay away from the victim, the defendant responded, "I know she wants me." (*Id.* at pp. 956-957.) The Supreme Court said such "statements appear to be the type of evidence of intent and motive that . . . triggers a court's duty" to give a cautionary instruction regarding a defendant's preoffense statements of intent, plan, motive, or design. (*Id.* at p. 957.) But the Supreme Court added that even if the trial court erred in not giving the cautionary instruction, the error was harmless. (*Ibid*.)

Here, like in *People v. Clark, supra,* 52 Cal.4th 856, any error in failing to instruct with CALCRIM No. 358 was harmless. In this context, the standard is "whether it is reasonably probable the jury would have reached a result more favorable to defendant had the instruction been given. [Citations.]" (*People v. Carpenter* (1997) 15 Cal.4th 312, 393.)

There was a wealth of evidence that defendant's mental health had deteriorated after he returned from Mexico. In addition to the statements referenced by defendant, Manuel testified that defendant's boss called and asked Manuel to retrieve defendant because defendant was "acting in a strange way." Manuel noticed defendant had changed. Whereas defendant had been a "very clean person," exercised every day, and ate healthy food, after he returned from Mexico "it was the opposite." Defendant would laugh inappropriately and more than normal. Mayra testified that after defendant returned from Mexico he was "distant" and "would talk to himself and laugh by himself." This evidence made it likely that the jury would have believed defendant actually made the challenged statements. Moreover, the evidence established that defendant was the only person with Javier at the time of the shooting, he immediately ran from the scene

6

without explaining what happened, and he had gunshot residue on his hands that evening. On this record, any error in failing to give a cautionary instruction was harmless.

III

Defendant further claims he is entitled to an additional day of presentence custody credit. He argues he was arrested on May 23, 2008, and remained in custody through sentencing on May 24, 2012, a total of 1,463 days actually served. Without objection from defendant, the trial court awarded 1,462 days of presentence custody credit, but did not state the dates used for its calculation. Defendant requests that we correct the miscalculation.

The Attorney General argues defendant's failure to object to the presentence award in the trial court forfeits the issue for appeal. But "[a] sentence that fails to award legally mandated custody credit is unauthorized and may be corrected whenever discovered." (*People v. Taylor* (2004) 119 Cal.App.4th 628, 647.)

The Attorney General further argues that the record is unclear as to whether defendant was arrested in the late hours of May 23, 2008, or the early morning hours of May 24, 2008. Defendant responds that the record shows he "interviewed in one of the patrol cars at 10:11 p.m." on May 23, 2008, and "[i]t was at that point that his presentence custody commenced."

However, the date of arrest is immaterial in determining presentence custody credits. Presentence custody credits are calculated from the date the defendant is booked, not the date when the defendant is arrested. (*People v. Macklem* (2007) 149 Cal.App.4th 674, 702; *People v. Ravaux* (2006) 142 Cal.App.4th 914, 919-921.) Defendant has not established that he was booked on May 23 rather than May 24. "The very settled rule of appellate review is a trial court's order/judgment is presumed to be correct, error is never

7

presumed, and the appealing party must affirmatively demonstrate error on the face of the record." (*People v. Davis* (1996) 50 Cal.App.4th 168, 172.)

Defendant has not established error.

DISPOSITION

The judgment is affirmed.

                                            MAURO              , J.

We concur:

_____HULL_____, Acting P. J.

_____DUARTE_____, J.