Filed 1/25/16  P. v. Olivas CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE, | D066947 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. JCF31211) |
| ALBERTO SOLIS OLIVAS, | |
| Defendant and Appellant. | |


APPEAL from a judgment of the Superior Court of Imperial County, Christopher J. Plourd, Judge.  Affirmed.


Heather L. Beugen, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Eric A. Swenson and Junichi P. Semitsu, Deputy Attorneys General, for Plaintiff and Respondent.

In February 2014, Alberto Solis Olivas entered a negotiated no contest plea to two counts of assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1) (count 3 [machete] and count 4 [metal pipe]),[1] both with great bodily injury (§ 12022.7, subd. (a)). In July, the court denied his motion to withdraw his plea. In September, the court sentenced Olivas to prison for a stipulated nine-year term: on count 3, the four-year upper term plus three years for great bodily injury and on count 4, one year (one-third the middle term) plus one year for great bodily injury. Olivas appeals, contending the court abused its discretion by denying his plea withdrawal motion. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

At around 7:30 a.m. on June 20, 2013, Calexico Police Officer Orlando Espino responded to a report of kidnapping and domestic violence. Officer Espino met with Claudia Salinas, who had a laceration on her head, lacerations on her hands, bruising on her face and legs, a swollen eye and blood on her head and hands. Salinas said Olivas, her boyfriend, had caused the injuries by punching her with a closed fist, hitting her with a metal pipe numerous times on her legs and upper body and hitting her on the head with a machete. Officers took photographs of Salinas's injuries.

Officer Espino and other officers went to Olivas's home, knocked on the door and received no answer. The officers waited outside the home, then approached the door again and smelled cleaning solution. Olivas left the home through the back door and was arrested.

---

[1]     Further statutory references are to the Penal Code.

Calexico Police Detective Manuel Ceja executed a search warrant at Olivas's home. As soon as Detective Ceja entered, he smelled a strong odor of cleaning solution and gasoline. He found a broken chair with a rope loosely tied around it, a machete with blood on the blade, a metal pipe with blood on it and ripped women's clothes smelling of gasoline. There was blood on the clothing, bed, sheets, pillows, bedroom floor and bathroom sink.

On August 5, 2013, Salinas told Detective Ceja that on June 19 and 20, Olivas attacked her in his home. He punched her in the face and slapped her, causing her to fall off the bed. He held her down and head-butted her. He hit her on the thigh four or more times with a machete blade and hit her on the head with the blade. He hit her in the stomach and side about four times with a metal pipe and poured hot sauce on her head and body. He told her to come into the kitchen, then slapped her again, causing her to fall off a chair. He set fire to her hair with a lighter. He showed her a rope and said he was going to tie her to the chair. Back in the bedroom, Olivas inhaled what appeared to be crystal methamphetamine and forcefully blew it in Salinas's mouth.[2]

In November 2013, Olivas rejected the People's plea agreement offer. In December, the court granted a defense motion to dismiss counts 6 and 7 (making criminal threats and inflicting corporal injury on a cohabitant). On January 27, 2014, Olivas rejected another offer that included a seven-year sentence. On January 28, trial began

---

[2]     The foregoing facts are derived from the August 2013 preliminary hearing testimony of Officer Espino, Detective Ceja and United States Border Patrol Officer Jose Gomez.

and the court granted the People's motion to dismiss count 1 (murder). On February 3, the People began presenting their case. Three witnesses testified, including Salinas and Officer Espino.[3] Officer Espino's testimony conformed to his testimony at the preliminary hearing. Salinas invoked the Fifth Amendment, explaining she was on probation. She also testified as follows: Olivas slapped her face with his hand once and hit her with the metal pipe on her legs. He did not punch her or hit her with the machete. The lacerations on her finger and head occurred when she grabbed the machete and hit herself with it. She spoke with Olivas the week preceding February 3. They did not discuss her testimony and did not agree she would refuse to testify. Olivas told her to say she did not want to testify. They discussed whether she could be held in contempt for refusing to testify and whether it would be better for her to serve a week in jail than for him to receive a life sentence.

On the morning of February 4, 2014, the deputy public defender (the public defender) told the court the case had been resolved. Olivas entered his no contest plea and the court dismissed the remaining counts, counts 2 and 5 (torture and false imprisonment by violence). On February 5, Olivas wrote a letter to the court claiming the public defender had "manipulated [him] to sign the 9[-]year plea bargain" by saying "if [Olivas] continued with the trial, [he] would lose and the judge would sentence [him] to life." Olivas cited the following asserted failures of the public defender: not obtaining

---

[3] The testimony of the third witness, Olivas's next door neighbor Irma Acuna, was not relevant to the facts of the case.

4

witnesses or DNA testing of the alleged blood on his floor, the pipe and the machete; not cross-examining Officer Espino; not asking Salinas relevant questions; and not allowing a hearing on Olivas's *Marsden* motion (*People v. Marsden* (1970) 2 Cal.3d 118).

On February 14, 2014, the court relieved the public defender and appointed new counsel (new counsel) for Olivas. In March, new counsel filed a motion to withdraw the plea, arguing the public defender had failed "to locate and call witnesses . . . and [had failed] to adequately investigate potential DNA evidence." After new counsel declared a conflict, the court relieved him and appointed another defense attorney. The People filed opposition to the plea withdrawal motion and the hearing took place on July 8.

Olivas testified he was forced to enter the plea because (1) the public defender said Olivas was going to lose the case and get a life sentence; (2) the public defender did not investigate Detective Ceja's background, challenge the search warrant[4] or obtain witnesses[5] and DNA testing;[6] (3) Salinas testified untruthfully; and (4) Olivas had a criminal background. On cross-examination, Olivas testified Salinas asked him how to exercise her Fifth Amendment privilege and she testified about that conversation the day Olivas entered the plea. Olivas also testified he did not recall Salinas testifying about

---

[4]    Olivas testified the search warrant gave the wrong date for the alleged offense.

[5]    Olivas testified people next door to the scene could have testified concerning Salinas's demeanor; also, Olivas's probation officer and halfway house personnel could have given their opinions of Olivas and Salinas.

[6]    Olivas testified there was no proof the samples gathered at the scene were human blood; also, the blood was from Olivas, not Salinas.

their conversation. On redirect examination, Olivas testified he never told Salinas to invoke the Fifth Amendment.

Salinas testified Olivas did not cause the cut on her head, restrain her or assault her. She also testified he did assault her. At the time of the assault she was drugged; she had used methamphetamine. Her prior testimony that Olivas assaulted her with weapons was false, and she falsely testified because she was on probation, did not want to get in trouble, and felt pressured by the prosecutor and Detective Ceja. She testified she never struck Olivas, then testified she struck him and he bled. They spoke about her invocation of the Fifth Amendment and her testimony at the plea withdrawal hearing. Salinas wanted the prosecutor to give Olivas a better offer and she wanted him to have a lighter sentence because he did not use weapons.

The court found as follows: Olivas and Salinas were not credible. They planned for her to invoke the Fifth Amendment so the trial would not go forward. When that plan failed, Olivas entered his plea. The motion to withdraw the plea was part of Olivas and Salinas's second plan that she would retract her claims concerning the assault. The photographic evidence was consistent with her earlier testimony that Olivas beat her severely. She could not have received the lacerations on her hands and other areas of her body without some type of weapon being used. Olivas's testimony was not consistent with the amount of blood. He and Salinas were the only witnesses. There was no evidence Olivas's proposed witnesses would have said anything that would have had any effect on the trial. Given the evidence of Salinas's bleeding, Olivas's statement that the

6

blood was not hers was speculative and DNA testing could have been against Olivas's interests.

DISCUSSION

Section 1018 states: "On application of the defendant at any time before judgment . . . , the court may, . . . for a good cause shown, permit the plea of guilty[7] to be withdrawn and a plea of not guilty substituted . . . . This section shall be liberally construed to effect these objects and to promote justice." It is the defendant's burden to demonstrate good cause by clear and convincing evidence. (*People v. Wharton* (1991) 53 Cal.3d 522, 585.) " 'Good cause' means mistake, ignorance, fraud, duress or any other factor that overcomes the exercise of free judgment and must be shown by clear and convincing evidence. [Citation.] The grant or denial of such a withdrawal motion is 'within the sound discretion of the trial court and must be upheld unless an abuse thereof is clearly demonstrated.' [Citation.] We are required to accept all factual findings of the trial court that are supported by substantial evidence. [Citation.]" (*People v. Ravaux* (2006) 142 Cal.App.4th 914, 917.)

As part of his plea bargain, Olivas waived his right to appeal "1) denial of my [section] 1538.5 motion, 2) issues related to strike priors . . . , and 3) any sentence stipulated herein." Respondent argues "[b]ecause [Olivas] waived all appellate rights, he necessarily waived his right to appeal the trial court's denial of his motion to withdraw his no contest plea." Respondent's premise is faulty; Olivas waived only the listed appellate

---

7      In the case of a felony, a no contest plea has the same legal effect as a guilty plea. (§ 1016, subd. 3.)

rights, not all appellate rights.  He did not waive his right to appeal the denial of his withdrawal motion.

Olivas cannot prevail on the merits, however.  We adopt the court's factual findings, including its credibility determinations, because they are supported by substantial evidence.  (*People v. Fairbank* (1997) 16 Cal.4th 1223, 1254.)  As demonstrated by the factual and procedural background above, substantial evidence supports the court's finding Olivas entered the no contest plea knowingly, intelligently and freely with the advice of competent counsel.  The court did not abuse its discretion by denying the plea withdrawal motion.

DISPOSITION

The judgment is affirmed.

NARES, Acting P. J.

WE CONCUR:


McINTYRE, J.


O'ROURKE, J.