Filed 5/26/16  P. v. McKinney CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D069014 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD247679) |
| DEBRA D. MCKINNEY, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Leo Valentine, Jr., Judge.  Affirmed.

Barbara A. Smith, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Barry Carlton and Sabrina Y. Lane-Erwin, Deputy Attorneys General, for Plaintiff and Respondent.

On the day scheduled for jury trial, Debra D. McKinney pleaded guilty to the "sheet," i.e., all of the charges and allegations in the information.  The pleas were not part

of a plea agreement and the trial court made no commitments other than it would consider all available sentencing options.

Specifically, appellant pleaded guilty to three counts of attempted robbery (Pen. Code,[1] §§ 211, 664) and four counts of false imprisonment by force or fear (§§ 236/237, subd. (a)). Appellant also admitted four strike priors (§ 667, subds. (b)-(i)) and one serious felony prior (§ 667, subd. (a)(1)). She was advised the maximum punishment possible was 75 years to life plus 20 years in prison. Appellant remained on bail pending her sentencing hearing.

Appellant failed to appear for sentencing. Approximately one year later appellant was extradited from Arizona. Upon her return to California, appellant retained new counsel and filed a motion to withdraw her guilty pleas.

Following an evidentiary hearing the trial court denied appellant's motion to withdraw her guilty pleas. Thereafter, the court declined to strike any of the "strike" priors. Appellant was sentenced to an indeterminate term of 25 years to life plus five years for the serious felony prior.

McKinney appeals contending the trial court erred in denying her motion to withdraw her guilty pleas. Relying on her own testimony and that of a friend, appellant argues she did not understand the plea proceedings, was not properly advised by counsel and had been under the influence of drugs and the previous night's drinking when she entered her guilty pleas. Appellant's trial counsel testified and the trial court reviewed the

---

[1] All further statutory references are to the Penal Code unless otherwise specified.

transcript of the change of plea. The trial court rejected appellant's testimony, impliedly believed trial counsel's contrary testimony, and concluded appellant had made a knowing and intelligent decision to plead guilty and that she had not demonstrated good cause to withdraw that plea.

As we will discuss, the record clearly supports the trial court's conclusion that appellant's plea was valid and that her motion to withdraw the plea was buyer's remorse and not based on a credible showing that the plea process was infirm. Accordingly, we will affirm the judgment.

STATEMENT OF FACTS

The facts of the underlying offenses are not relevant to the issues here. However, to provide background for the discussions which follow, we will adopt the summary of facts from the respondent's brief as accurate and sufficient to provide context.

On April 20, 2013, appellant and her brother Roy McKinney went into a Little Caesar's Pizza restaurant at approximately 10:00 p.m. Appellant grabbed a female employee (Rosangela Zamorano) by the neck and said she needed money because her "daughter" had been kidnapped. Appellant demanded that Zamorano open the cash register. Zamorano told appellant she could not open the register, but that the manager, who was next door in a meeting, could do so. Appellant held Zamorano by the neck as they walked to the meeting room. At the meeting room door, they encountered appellant's brother, Roy McKinney, who was wearing a mask. One of the three knocked on the meeting room door.

3

When the manager, Younghcai Saetia, opened the door, Roy pushed Saetia and entered the room. Roy announced that he and appellant needed money for appellant's "daughter." Roy held a set of keys in his fist, with one key protruding through his fingers. Roy announced that if he got what he wanted, no one would get hurt. Appellant said that she needed money for her "daughter" and repeated that "they" had kidnapped her "daughter" and were going to kill her. Saetia did not believe appellant. He responded that he could get money from the cash register, so he, appellant and Zamorano walked back into the restaurant. Roy remained with the other employees in the meeting room. Roy told the employees not to touch their cell phones and said he had a gun in his back pocket. At one point, when Roy saw an employee with a cell phone, he grabbed and threw it, breaking it.

Saetia whispered to Zamorano to call the police from the phone in the back. While Saetia distracted appellant, Zamorano called 911. Another employee also called 911.

Saetia delayed appellant and Roy, first by pretending to try and open the register, and then by enlisting the help of another manager who was in the meeting room. Finally, Saetia told Roy that the safe was on a timer and would open in 10 minutes.

When the police arrived, they took appellant and Roy into custody. They both were wearing latex gloves. Appellant had an airsoft pellet gun that she had purchased down the street from the restaurant. Roy had the key to appellant's truck, which had a stolen license plate on the back.

4

During her postarrest interview, appellant said that she had been ordered to do the robbery by a man wearing a motorcycle helmet. She complied because she had been "kidnapped" and feared for her dog's safety. Her dog, which she referred to as her "daughter," was in her truck at the time of the robbery. She explained she had bought the gun as a birthday present for her nephew. The man wearing the motorcycle helmet put the toy gun into appellant's waistband. She stated she recalled seeing her brother at the restaurant, but did not know how he had gotten there.

DISCUSSION

Appellant's moving papers in the trial court and her testimony at the evidentiary hearing took the position she was under the influence of alcohol and drugs at the change of plea. She said her attorney did not adequately advise her; that she was overwhelmed and confused and did not understand what was happening, notwithstanding her statements at the change of plea and her initials on the change of plea form.

We have reviewed the transcript of the change of plea, and find it to be very thorough and detailed. The trial court took time and effort to make sure appellant understood the consequences of the change of plea and had the benefit of adequate assistance of counsel. The change of plea form contains the factual basis of the pleas, the potential punishment and the various rights which appellant gave up as part of the change of plea. That form was also carefully reviewed by the court with appellant before the pleas. As we will discuss, appellant's testimony was contrary to her testimony at the change of plea and contrary to the testimony of her attorney. The trial court did not

5

accept appellant's revised version of the facts and thus did not find any basis to withdraw her plea.

## A. Legal Principles

A guilty plea may be withdrawn prior to judgment where a defendant shows by clear and convincing evidence, good cause to withdraw it. (§ 1018; *People v. Cruz* (1974) 12 Cal.3d 562, 566.)

In *People v. Huricks* (1995) 32 Cal.App.4th 1201, 1208 the court said:

> "To establish good cause, it must be shown that defendant was operating under mistake, ignorance, or any other factor overcoming the exercise of his free judgment. [Citations.] Other factors overcoming defendant's free judgment include inadvertence, fraud or duress. [Citations.] However, '[a] plea may not be withdrawn simply because the defendant has changed his mind.' "

When we review the trial court's decision to deny a motion to withdraw a guilty plea, we look to the trial court's factual findings. We must accept those findings if they are supported by substantial evidence. (*People v. Fairbank* (1997) 16 Cal.4th 1223, 1254.) The reviewing court does not make credibility determinations nor does it reweigh the evidence. Those are matters for the trial court. (*People v. Ravaux* (2006) 142 Cal.App.4th 914, 918; *People v. Hunt* (1985) 174 Cal.App.3d 95, 103.)

After determining the facts, the trial court's decision to grant or deny the motion to withdraw is reviewed under the abuse of discretion standard. (*People v. Superior Court* (*Giron*) (1974) 11 Cal.3d 793, 796; *People v. Nance* (1991) 1 Cal.App.4th 1453, 1456.) We will only overturn such decision where the record demonstrates a clear abuse of discretion. (*People v. Welch* (1993) 5 Cal.4th 228, 234.)

6

## B. The Evidentiary Hearing

The trial court reviewed the moving and opposing papers filed prior to the hearing. Appellant testified at the hearing as did her friend, who claimed to be present during the discussions of the change of plea with defense counsel, and appellant's trial counsel.

In essence, appellant testified she had a hangover from drinking all night prior to the plea and that she had taken Xanax the night before and on the morning of the plea. She only spent 20 minutes with her attorney prior to the plea and her attorney did not go over the factual basis for the plea, and she did not know the potential penalty she faced. She did not understand the proceeding and was confused and overwhelmed.

Appellant did acknowledge her contrary statements under oath and in the change of plea form. She said she should have denied that she understood the proceeding or that she had adequate advice of counsel. Appellant explained the contradiction in part by claiming she simply followed counsel's guidance when counsel would nod at her to indicate the right answers.

Trial counsel contradicted almost all of appellant's testimony. Counsel said she had communicated with appellant at least 20 times over the nine months the case had been pending, twice in her office, at each court appearance and by phone and e-mail. Counsel said appellant did not appear to be under the influence of drugs or alcohol, and that she discussed the plea, its factual basis and sentence potentials with appellant at length before the change of plea took place.

At the end of the hearing the trial court rejected appellant's new version of the events at the time of the change of plea. The court's remarks clearly demonstrate its

7

rejection of appellant's testimony and the reasons for its decisions.  We will take the somewhat unusual step of setting forth the bulk of those remarks at this place in our opinion because they make clear the court's findings and reasoning better than an attempt by us to summarize them:

> "I do recall this case clearly because Miss McKinney was out of custody, which was odd to the Court someone facing life sentence coming to the courtroom being out of custody.
>
> "The request to the Court was if she pled guilty, would the Court consider not placing her into custody so she could finalize some things in her personal life.
>
> "I had that conversation with you, Miss McKinney, before I agreed to let you go.  I indicated to you that if you did not come back, that it'd make your attorney's job even more difficult to convince the Court if the Court was of a mind to strike your strikes.  We had that discussion.  You gave me your word.  You assured me that you would come back.
>
> "I also understand the responsibility for making sure that a defendant is not under the influence of something and not understand what's going on.  I'm satisfied that Miss McKinney was of a clear mind when I met with her, when I talked with her and I took her change of plea.
>
> "Additionally, if an attorney is involved in telling her client what to say, what not to say when this Court takes a change of plea, I will stop because it disrupts the Court's ability to make a decision whether or not that defendant is of a clear mind, understand what's taking place, and to assure that it fulfills its duty and responsibility to the State, to the defendant, and to the oath of which I've taken in this office.
>
> "I do that whenever an attorney starts to nod, starts talking to their client when I'm talking to their client because it's disruptive.  It's not fair to their client.  It's not fair to the Court.  I do not accept an attorney's nodding the head and their client saying, I plead guilty based upon my attorney nodding their head.  That is something that I

8

pay close attention to.  I take my role taking a change of plea very seriously.

"It was of some concern that this was a case where the exposure was great.  And so the Court was of a mind that I want to make sure that this person understands what they are doing.  I'm satisfied Miss McKinney knew at the time she entered this plea what she was doing.  And the fact that she was told that Miss Murphy believed that I may strike her strike, that she could trust that.  She trusted her attorney.  Her attorney made that decision, and they entered the plea in this department.

"Now, here's what happened since then.  Miss McKinney did not return.  I understand she was in custody in Arizona.  She was not returned on the date for her sentencing.  Her brother was.  I did not strike his strikes.  She knows that I did not strike his strikes.

"The supplemental report of the probation officer's when she starts to indicate that she's not sure that she should have entered this plea, she's not sure of that because she thinks that I'm going to judge her based upon the way I judged her brother.  And that's what the Court's conclusion is based upon all the evidence before the Court.

"It's not that she did not know what she was doing when she entered the plea.  It's not that she was under the influence and that induced her to enter a plea.  It's not that anyone misrepresented anything to her when she entered this plea.  It's that she believes because I did not strike her brother's strike, I will not strike her strike.  And as a result, she wants to withdraw the plea."

### C.  Analysis

Since the trial court disbelieved appellant's version of events as given at the motion hearing, there is no substantial evidence in this record from which one could find good cause to withdraw the plea in this case.  As we have pointed out, the transcript of the change of plea and the change of plea form provided appellant with a full and complete advisement of the consequences of the plea.  The testimony of trial counsel fully corroborated the trial court's original assessment that appellant had made a knowing

9

and intelligent decision to plead guilty, in the hopes that this particular trial judge might be willing to strike her "strike" priors and give her a reduced sentence.

After the plea, and before appellant was sentenced, the court had sentenced appellant's brother and did not strike the priors. Here the court reasonably concluded that given the intervening sentence of the brother, appellant was afraid she would receive the same type of sentence and wanted a new deal. The court's decision that there was no showing of good cause to withdraw the plea is supported by substantial evidence and was well within the court's sound discretion.

## DISPOSITION

The judgment is affirmed.


---
HUFFMAN, J.

WE CONCUR:


---
McCONNELL, P. J.


---
McDONALD, J.

10