Filed 4/25/19

# CERTIFIED FOR PARTIAL PUBLICATION[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>MANUEL MIRAMONTES CRUZ, JR.,<br><br>    Defendant and Appellant. | F074667<br><br>(Super. Ct. No. 16CR-03804)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Merced County.  John D. Kirihara and Ronald W. Hansen, Judges.[†]

Tutti Hacking and Paul Kleven, under appointments by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez and Jennifer Oleksa, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]     Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part II of the Discussion.

[†]     Judge Hansen presided on September 6, 2016; Judge Kirihara presided over all other hearings pertinent to this appeal.

Defendant Manuel Miramontes Cruz, Jr., was charged with driving under the influence (DUI) of alcohol within 10 years of a prior felony DUI conviction (Veh. Code, § 23550.5, subd. (a); count 1), driving with a blood-alcohol level of 0.08 percent or more within 10 years of a prior felony DUI conviction (*id*., § 23550.5, subd. (a); count 2), driving with a suspended license (*id*., § 14601.2, subd. (a); count 3), and resisting arrest (Pen. Code, § 148, subd. (a)(1); count 4).[1]  His motions to suppress evidence (§ 1538.5) were denied, and he pled no contest to counts 1, 3, and 4 in return for an indicated sentence of two years in prison.[2]  His subsequent motion to withdraw his plea was denied.

In the published portion of this opinion, we hold that, in light of the conditions of probation to which defendant was subject when arrested, a warrantless seizure of a blood sample against defendant's wishes did not violate the Fourth Amendment.  In the unpublished portion, we conclude defendant failed to establish good cause to withdraw his plea.  Accordingly, we affirm.

## **FACTS**[3]

At 10:50 p.m. on May 2, 2016, Officer Opinski of the Merced Police Department was traveling northbound on M Street in Merced, when he saw a vehicle heading southbound on M Street at a high rate of speed.  At a curve in the roadway, the car, which was driven by defendant, crossed partially into the opposing lane, then corrected itself.  Defendant turned eastbound on East 22nd Street, and Opinski followed.  After making a U-turn, defendant ran a stop sign and made two more turns, nearly hitting a pedestrian.

---

[1]     Further statutory references are to the Penal Code unless otherwise stated.

[2]     Included in the agreement was the termination of probation, and imposition of a consecutive eight-month term, in another case.  That case is not before us.

[3]     The facts are taken from the joint preliminary hearing and hearing on the initial motion to suppress evidence.  We review the evidence in a light favorable to the lower court's ruling.  (*In re William V.* (2003) 111 Cal.App.4th 1464, 1468.)

2.

Opinski activated his emergency lights. Defendant's vehicle yielded and collided with the curb on West 25th Street. Defendant then got out of the vehicle and ran, falling several times. Opinski caught up and arrested him. When he did, he smelled a strong odor of an alcoholic beverage emanating from defendant's breath and person. When Opinski asked if defendant was willing to submit to a field sobriety test, defendant said "No." His response to every question Opinski asked was "I want my lawyer." Opinski then read defendant the "Admin Per Se Form," regarding the consequences of failing to submit to a breath or blood test. Again, defendant responded to all questions by saying he wanted his lawyer.

Based on defendant's driving, inability to keep his balance while Opinski was chasing him, and the odor of alcohol, Opinski opined defendant was under the influence and too impaired to operate a motor vehicle safely. In addition, his driver's license was suspended.

Once defendant refused to take a breath or blood test, Opinski transported him to the police station so Opinski could author a search warrant for defendant's blood. Upon receiving paperwork and information from dispatch that defendant was on DUI probation and required to submit to a breath or blood test, Opinski abandoned the warrant and instead transported defendant to the hospital for a blood draw. At the hospital, defendant expressly stated he was not consenting to a blood draw. Nevertheless, the phlebotomist drew defendant's blood at 11:57 p.m.[4] Defendant had a blood-alcohol level of 0.157 percent.

---

[4] An audio-video recording of the blood draw obtained from Opinski's body camera was admitted into evidence and played for the magistrate.

# DISCUSSION

## I

## MOTIONS TO SUPPRESS EVIDENCE

### A. Background

Prior to the preliminary hearing, defendant moved to suppress all evidence obtained as a result of the blood draw, on the ground the warrantless invasion of his bodily integrity, undertaken without his consent, violated the Fourth Amendment. The magistrate ruled the terms and conditions of defendant's felony probation justified the nonconsensual blood draw, and so denied the motion.

Following the filing of the information, defendant renewed his motion. At the September 6, 2016 hearing (at which no evidence was presented), defendant argued probation was something to which a person consented, consent could be withdrawn at any time, and the withdrawal of consent would then only constitute a violation of probation. The court rejected this position, reasoning that to put the probationer in control of when he or she wanted to be subject to probation terms would defeat the whole purpose of probation. Accordingly, the motion was denied.

Defendant now reiterates his argument, claiming the forced blood draw violated his Fourth Amendment rights because he did not consent to it and the consequence of his refusal should have been prosecution for a probation violation. He also claims he never consented to a forced blood draw as a condition of probation. The Attorney General contends the suppression motion was properly denied, because defendant expressly consented to chemical tests and a Fourth Amendment waiver as a condition of probation. We agree.

### B. Analysis

Invasions of the body, including nonconsensual extractions of blood, "are searches entitled to the protections of the Fourth Amendment. [Citation.]" (*People v. Robinson* (2010) 47 Cal.4th 1104, 1119-1120.) "The touchstone of the Fourth Amendment is

4.

reasonableness, and the reasonableness of a search is determined 'by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests.' [Citation.]" (*United States v. Knights* (2001) 534 U.S. 112, 118-119.)  Reasonableness is measured objectively by examining the totality of the circumstances.  (*People v. Schmitz* (2012) 55 Cal.4th 909, 921 (*Schmitz*); *People v. Robinson*, *supra*, 47 Cal.4th at p. 1120.)

Where, as here, a motion to suppress evidence is submitted to the superior court on the preliminary hearing transcript (see § 1538.5, subd. (i)), " 'the appellate court disregards the findings of the superior court and reviews the determination of the magistrate who ruled on the motion to suppress, drawing all presumptions in favor of the factual determinations of the magistrate, upholding the magistrate's express or implied findings if they are supported by substantial evidence, and measuring the facts as found by the trier against the constitutional standard of reasonableness.' [Citation.]" (*People v. Hua* (2008) 158 Cal.App.4th 1027, 1033.)  "In determining whether, on the facts so found, the search or seizure was reasonable under the Fourth Amendment, we exercise our independent judgment.  [Citations.]" (*People v. Glaser* (1995) 11 Cal.4th 354, 362.) We affirm the lower court's ruling if correct under any legal theory.  (*People v. Hua*, *supra*, at p. 1033.)

"It is well settled under the Fourth and Fourteenth Amendments that a search conducted without a warrant issued upon probable cause is '*per se* unreasonable . . . subject only to a few specifically established and well-delineated exceptions.' [Citations.]  It is equally well settled that one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent.  [Citations.]" (*Schneckloth v. Bustamonte* (1973) 412 U.S. 218, 219; accord, *People v. Woods* (1999) 21 Cal.4th 668, 674.)  " '[W]hen a prosecutor seeks to rely upon consent to justify the lawfulness of a search, he has the burden of proving that the consent was, in fact, freely and voluntarily given.' [Citations.]" (*Schneckloth*, *supra*,

at p. 222.)  He or she must also prove the warrantless search was within the scope of the consent given.  (*People v. Cantor* (2007) 149 Cal.App.4th 961, 965.)  " 'Whether the search remained within the boundaries of the consent is a question of fact to be determined from the totality of [the] circumstances.  [Citation.]  Unless clearly erroneous, we uphold the trial court's determination.'  [Citations.]"  (*People v. Tully* (2012) 54 Cal.4th 952, 983-984.)  The applicable standard of proof is preponderance of the evidence.  (*United States v. Matlock* (1974) 415 U.S. 164, 177-178, fn. 14; *People v. James* (1977) 19 Cal.3d 99, 106, fn. 4.)

"In California, a person may validly consent in advance to warrantless searches and seizures in exchange for the opportunity to avoid serving a state prison term.  [Citations.]  Warrantless searches are justified in the probation context because they aid in deterring further offenses by the probationer and in monitoring compliance with the terms of probation.  [Citations.]  By allowing close supervision of probationers, probation search conditions serve to promote rehabilitation and reduce recidivism while helping to protect the community from potential harm by probationers.  [Citation.]"  (*People v. Robles* (2000) 23 Cal.4th 789, 795; accord, *People v. Woods*, *supra*, 21 Cal.4th at p. 674; *People v. Bravo* (1987) 43 Cal.3d 600, 608; see *United States v. Knights*, *supra*, 534 U.S. at p. 119.)

"Inherent in the very nature of probation is that probationers 'do not enjoy "the absolute liberty to which every citizen is entitled." '  [Citations.]"  (*United States v. Knights*, *supra*, 534 U.S. at p. 119.)  "Probation is not a right, but a privilege."  (*People v. Bravo*, *supra*, 43 Cal.3d at p. 608.)  " '[A] probationer who has been granted the privilege of probation on condition that he submit at any time to a warrantless search may have no reasonable expectation of traditional Fourth Amendment protection.'  [Citation.]  Therefore, 'when [a] defendant in order to obtain probation specifically agree[s] to permit at any time a warrantless search of his person, car and house, he voluntarily waive[s] whatever claim of privacy he might otherwise have had.'  [Citations.]"  (*People v. Ramos*

(2004) 34 Cal.4th 494, 506; see *United States v. Knights*, *supra*, 534 U.S. at pp. 119-120.) " 'If the defendant finds the conditions of probation more onerous than the sentence he would otherwise face, he may refuse probation' [citation] and simply 'choose to serve the sentence' [citation]." (*People v. Moran* (2016) 1 Cal.5th 398, 403, fn. omitted.) "A probationer's waiver of his Fourth Amendment rights is no less voluntary than the waiver of rights by a defendant who pleads guilty to gain the benefits of a plea bargain. [Citations.]" (*People v. Bravo*, *supra*, 43 Cal.3d at p. 609.)

At the time of his arrest in the present case, defendant was on formal felony probation as a result of a violation of Vehicle Code section 23550, subdivision (a) in a prior matter.[5] The judge that sentenced defendant in the earlier case orally informed him, inter alia, that he was to submit to search and seizure of his person, vehicle, and residence at the request of a peace officer any time of the day or night, with or without a warrant and with or without probable cause, and that he was to submit to chemical testing at the request of a peace or probation officer. In addition, the judge told defendant: "Before you leave court this morning, I'm going to give you a set of probation orders. I want you to read them and sign them. Your signature is going to let me know that you understand what you are supposed to do *and you agree to do it*." (Italics added.) The written probation conditions, which were signed by defendant, included the following:

> "11      Submit your person, vehicle, place of residence or any other belongings to search and seizure, without a warrant, any time day or night, by any Probation Officer and/or Peace Officer, with or without probable cause.  [¶] . . . [¶]

> "34      If arrested for driving under the influence of alcohol in violation of Section 23152 or 23153 of the Vehicle Code, *shall not refuse to submit to a chemical test of your blood*, breath or urine." (Italics added.)

In our view, the only reasonable interpretation of these conditions is that defendant had no right to refuse a blood draw in the present case. When he did refuse, Opinski was

---

**5**      Defendant was placed on probation on June 12, 2013.

legally justified in having blood drawn anyway, so long as the procedure was performed in a reasonable manner.[6] (See *Schmerber v. California* (1966) 384 U.S. 757, 771-772 (*Schmerber*).)

The federal authorities discussed by defendant at length in his briefs do not assist him. In *Schmerber*, the United States Supreme Court upheld a warrantless blood test of an individual arrested for DUI because the officer "might reasonably have believed that he was confronted with an emergency, in which the delay necessary to obtain a warrant, under the circumstances, threatened 'the destruction of evidence.' " (*Schmerber*, *supra*, 384 U.S. at p. 770.) In *Missouri v. McNeely* (2013) 569 U.S. 141 (*McNeely*), the high court reaffirmed *Schmerber*'s consideration of the totality of the circumstances in determining whether the exigent circumstances exception to the warrant requirement existed (*McNeely*, *supra*, at p. 151), but rejected the notion the natural metabolization of alcohol in the bloodstream presented an exigency justifying a warrantless nonconsensual blood test in every drunk driving case (*id*. at p. 144). In *Birchfield v. North Dakota* (2016) 579 U.S. ___, ___ [136 S.Ct. 2160, 2184] (*Birchfield*), the court held the Fourth Amendment permits warrantless breath tests, but not warrantless blood tests, incident to arrests for drunk driving. The foregoing cases do not address warrantless blood extractions performed pursuant to probation conditions, and the People did not seek to justify the blood draw in defendant's case on the grounds of exigency or as a search incident to arrest.

Defendant's citation to *People v. Mason* (2016) 8 Cal.App.5th Supp. 11, a case arising under California's implied consent law, is similarly unavailing. In that case, the

---

[6] Defendant raises no issue concerning the manner in which his blood was taken, except to assert he was "in constant pain" and did not consent. We have reviewed the audio and video recording from Opinski's body camera. Although defendant claimed to feel pain during the procedure, the video shows a forcible blood draw only in the sense that it was over defendant's objection and not in the sense that he was physically overpowered.

appellate division of the superior court distinguished between advance consent to search given as a probation condition, and such consent implied in return for the privilege of driving. (*Id.* at pp. Supp. 23-24.) The court stated: "[T]he probation-search cases rest on the premise that the probationer, in accepting a search condition, 'truly consents' to the resulting diminution in Fourth Amendment rights. [Citation.] Nothing of the kind can be said of a driver to whom consent is merely *imputed* by the implied consent law." (*Id.* at p. Supp. 25; see *People v. Harris* (2014) 225 Cal.App.4th Supp. 1, 3, 10 [blood draw is justified under 4th Amend. by consent under implied consent law where driver cooperated with procedure; driver arrested for DUI cannot be said to have consented, under implied consent law, to forcible blood draw in contravention of then-expressed wishes if he or she purports to withdraw consent].)

The California Supreme Court has not yet determined whether a general probation search condition authorizes a warrantless, nonconsensual blood draw. (See *People v. Simon* (2016) 1 Cal.5th 98, 120.)[7] Here, however, defendant was not merely subject to California's implied consent law or a general probation search condition requiring that he submit his person, vehicle, place of residence, and belongings to search and seizure. Rather, he expressly agreed that if he was arrested for drunk driving, he would not refuse to submit to a chemical test of his blood. Because of this, his challenge to the validity of the search and seizure fails.

Defendant argues, however, that he was never told his refusal to submit to a blood draw would result in a warrantless, forcible blood extraction. Accordingly, he says, he

---

[7] Review is currently pending before the state high court on the question whether law enforcement violated the Fourth Amendment by taking a warrantless blood sample from an unconscious defendant, or whether the search and seizure was valid because the defendant expressly consented to chemical testing when he applied for a driver's license or because he was deemed to have given his consent under the implied consent law. (*People v. Arredondo* (2016) 245 Cal.App.4th 186, review granted June 8, 2016, S233582.)

never agreed to undergo a forced blood draw; hence, Opinski's only option was to arrest defendant for violating his probation and have him prosecuted for that violation.

We reject this claim. In *People v. Mason* (1971) 5 Cal.3d 759 (*Mason*), disapproved on another ground in *People v. Lent* (1975) 15 Cal.3d 481, 486, footnote 1, the defendant was subject to a condition of probation requiring him to submit to a search, with or without a warrant, whenever requested by police officers. The California Supreme Court held this condition authorized the warrantless search of the defendant's residence and car. (*Mason*, *supra*, at pp. 762-763.) In so concluding, it rejected the defendant's claim that since the condition required him to submit to a search " 'whenever requested to do so,' " the officers should have requested permission to search and thereby given the defendant the opportunity to grant or refuse permission. (*Id*. at p. 763.) The court stated: "To so construe the condition would . . . render it utterly meaningless. A 'condition' implies a qualification or restriction; accordingly, a condition to a grant of probation contemplates some limitation upon the probationer's rights. [Citation.] If defendant had the right to withhold his consent to a warrantless search, the protection thereby afforded him would have been as broad as that afforded all other persons under the Fourth Amendment. . . . [¶] . . . [T]o accept defendant's interpretation of the probation condition would defeat the acknowledged purposes of such a provision to deter further offenses by the probationer and to ascertain whether he is complying with the terms of his probation." (*Ibid*.)

The state high court concluded that when the defendant, in order to obtain probation, specifically agreed to permit a warrantless search of his person, car, and house, he voluntarily waived whatever claim of privacy he might otherwise have had. (*Mason*, *supra*, 5 Cal.3d at p. 766.) The court also rejected a position akin to the one taken by defendant in the case before us: "Defendant contends that various policy considerations should lead us to hold that police officers may not employ 'self help' when a probationer refuses to consent to a search, but that the officers should simply report the matter to the

10.

probation officer who may initiate proceeding[s] to revoke probation. . . . [I]f the only governmental remedy for a refusal to consent to a search was to seek a revocation of probation, the dual purposes of the probation condition, namely, deterrence and discovery of subsequent offenses, would be frustrated." (*Ibid.*, fn. omitted.)

Defendant contends *Mason* is not pertinent authority because it concerns a home search, not a forced blood draw. Insofar as defendant claims Opinski was required to accept defendant's refusal of chemical testing and arrest him for a violation of probation, this is a distinction without a difference. Nor is it relevant to the validity of the search that defendant could have been prosecuted for DUI without the blood draw.

Defendant further contends *Mason* is an old case, and the United States and California Supreme Courts "have made many new decisions regarding privacy in the probation, consent and blood draw context." Defendant points to *McNeely*, *Birchfield*, and *Schmitz*. In our view, these opinions do not detract from *Mason*, as they are not concerned with searches undertaken pursuant to probation conditions. As we previously observed, *McNeely* addressed the exigent circumstances exception to the warrant requirement. (*McNeely*, *supra*, 569 U.S. at p. 145.) *Schmitz* was concerned with a warrantless parole search, and noted the "clear distinction between probation and parole with regard to consent." (*Schmitz*, *supra*, 55 Cal.4th at p. 920.) *Birchfield* addressed searches incident to arrest. (*Birchfield*, *supra*, 579 U.S. at p. ___ [136 S.Ct. at p. 2184].)

*Birchfield* also held that even assuming a warrantless blood sample can be taken pursuant to an implied consent law, a state cannot impose criminal penalties on the refusal to submit to such a test. (*Birchfield*, *supra*, 579 U.S. at p. ___ [136 S.Ct. at p. 2185.) However, laws that imply consent as a condition of the driving privilege are manifestly different, in terms of what constitutes a reasonable search and seizure under the Fourth Amendment, than express consent given by means of probation conditions. We conclude it would be illogical — and would defeat the purpose of probation conditions — to extend *Birchfield*'s reasoning so as to hold a defendant could withdraw

11.

consent to a probation condition, a violation of a search condition of probation could not result in a new criminal charge, or that the results of the search could not be used as evidence in prosecuting that charge.

## II[*]

### <u>MOTION TO WITHDRAW PLEA</u>

A.  **<u>Background</u>**

On October 11, 2016, defendant withdrew his not guilty pleas and pled no contest to counts 1, 3, and 4 in return for a sentence of the middle term of two years in prison in this case plus an eight-month consecutive term in another matter. During the course of the change of plea proceedings before Commissioner Schechter, this colloquy took place:

> "THE COURT: . . . . [¶] I have been handed this Advisement of Rights, Waiver, and Plea Form. Have you had enough time to go over this form?
>
> "THE DEFENDANT: Yes, ma'am.
>
> "THE COURT: Do you have any questions?
>
> "THE DEFENDANT: No.
>
> "THE COURT: Are those your initials?
>
> "THE DEFENDANT: Yes.
>
> "THE COURT: And is that your signature on the bottom of page 3? (Indicating.)
>
> "THE DEFENDANT: Yes, ma'am.
>
> "THE COURT: And you understand that you are giving up certain constitutional rights and also that there are other significant consequences that attach to your plea here today. If you are not a citizen of the United States, your plea in this case could result in your deportation, exclusion from re-admission into the United States, and denial of naturalization in the future. [¶] Do you understand that?

---

[*]     See footnote, *ante*, page 1.

"THE DEFENDANT:  Yes.

"THE COURT:  I know you're already on felony probation, but I'll just remind you that you will be prohibited from owning or possessing or having under your custody and control any firearms or ammunition for the rest of your life.  [¶]  Do you understand that?

"THE DEFENDANT:  (No response.)

"THE COURT:  Is that a 'Yes'?  You are not allowed to own any firearms or ammunition.

"THE DEFENDANT:  When — this crime has nothing to do with firearms.  [¶] . . . [¶]

"THE COURT:  So do you understand that now?

"THE DEFENDANT:  For life?

"[DEFENSE COUNSEL]:  Yes.

"THE COURT:  It's for life, yes. . . .  [¶]  Do you understand that?

"THE DEFENDANT:  Yes.

"THE COURT:  Also, if you are arrested for driving under the influence again in the future, this conviction could be used to enhance your penalty.  [¶]  Do you understand that?

"THE DEFENDANT:  Yes, ma'am.

"THE COURT:  Also, if you are driving under the influence and you cause an accident and somebody dies as a result, you could be charged with murder and potentially spend the rest of your life in prison.  [¶]  Do you understand that, as well?

"THE DEFENDANT:  Yes, ma'am.

"THE COURT:  All right.  Do you also understand you have the right to have a court trial or a jury trial, to have the Court issue subpoenas, to have your attorney confront and cross examine witness [*sic*], to remain silent and not incriminate yourself, and to present a defense?

"THE DEFENDANT:  Yes, ma'am.

13.

"THE COURT: [Defense counsel], have you had enough time to discuss this case with your client, the possible defenses, are satisfied he understands the nature and consequences of what he is doing here today, and concur in his change of plea?

"[DEFENSE COUNSEL]: Yes."

Exactly two weeks later, defense counsel filed, on defendant's behalf, a motion to withdraw the plea. The motion stated, in pertinent part: "Mr. Cruz asks to withdraw his plea because he states he was not competent to enter a plea because he was unable to understand the nature and consequences of the proceedings due to his participation in a hunger strike at the jail."

The motion was heard on November 8, 2016, by Judge Kirihara.[8] Defense counsel stated that defendant's "main contention was that he didn't understand what was going on because he was — as a participant of the hunger strike, he was not — his mental faculties were not there."

Judge Kirihara stated he had reviewed the transcript of the change of plea proceedings. It showed defendant was "voir dired . . . pretty thoroughly about understanding what was going on," so there was no basis for the motion. The motion was denied, and defendant was sentenced consistently with the plea agreement.

Defendant now contends he should have been allowed to withdraw his plea.[9] He asserts the "cold record" would not have indicated his inability to understand the proceedings; accordingly, Judge Kirihara had a duty to inquire more thoroughly and to offer defendant an opportunity to explain "what he was suffering" at the time of the

---

[8]     Judge Kirihara had presided over defendant's preliminary hearing. At defense request, Commissioner Schechter sent the matter back to Judge Kirahara for sentencing. No objection was made to Judge Kirihara hearing the motion to withdraw the plea.

[9]     We allowed defendant to file a late amended notice of appeal and obtain the certificate of probable cause required to permit him to raise this issue. (See *People v. Johnson* (2009) 47 Cal.4th 668, 679.)

change of plea proceedings.  The Attorney General argues the motion was properly denied.  We agree.

**B.**      **Analysis**

"On application of the defendant at any time before judgment . . . , the court may, . . . for a good cause shown, permit the plea of guilty to be withdrawn and a plea of not guilty substituted. . . .  This section shall be liberally construed to effect these objects and to promote justice."  (§ 1018.)

Good cause must be shown by clear and convincing evidence.  (*People v. Cruz* (1974) 12 Cal.3d 562, 566; *People v. Ravaux* (2006) 142 Cal.App.4th 914, 917.)  "To establish good cause, it must be shown that defendant was operating under mistake, ignorance, or any other factor overcoming the exercise of his free judgment.  [Citations.]  Other factors overcoming defendant's free judgment include inadvertence, fraud or duress.  [Citations.]  However, '[a] plea may not be withdrawn simply because the defendant has changed his mind.'  [Citations.]"  (*People v. Huricks* (1995) 32 Cal.App.4th 1201, 1208; accord, *People v. Nance* (1991) 1 Cal.App.4th 1453, 1456.)

" ' "[T]he withdrawal of a plea of guilty should not be denied in any case where it is in the least evidence that the ends of justice would be subserved by permitting the defendant to plead not guilty instead . . . ." ' [Citations.]"  (*People v. Ramirez* (2006) 141 Cal.App.4th 1501, 1507.)  However, "the promotion of justice includes a consideration of the rights of the prosecution, which is entitled not to have a guilty plea withdrawn without good cause."  (*People v. Hightower* (1990) 224 Cal.App.3d 923, 928.)  "Guilty pleas resulting from a bargain should not be set aside lightly and finality of proceedings should be encouraged."  (*People v. Hunt* (1985) 174 Cal.App.3d 95, 103.)

"A decision to deny a motion to withdraw a guilty plea ' "rests in the sound discretion of the trial court" ' and is final unless the defendant can show a clear abuse of that discretion.  [Citation.]"  (*People v. Fairbank* (1997) 16 Cal.4th 1223, 1254.)  The trial court's exercise of discretion "must not be disturbed on appeal *except* on a showing

15.

that the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice. [Citations.]" (*People v. Jordan* (1986) 42 Cal.3d 308, 316.) "Moreover, a reviewing court must adopt the trial court's factual findings if substantial evidence supports them. [Citation.]" (*People v. Fairbank*, *supra*, 16 Cal.4th at p. 1254.) A defendant's allegations concerning his or her mental state involve factual questions for the trial court to resolve. (*People v. Caruso* (1959) 174 Cal.App.2d 624, 636.)

Here, the transcript of the change of plea proceedings furnishes substantial evidence supporting Judge Kirihara's (1) conclusion defendant understood what was going on when he pled no contest, and (2) implicit determination defendant's exercise of free judgment was not overcome. (See *People v. Ravaux*, *supra*, 142 Cal.App.4th at p. 918.) Judge Kirihara was not required to believe defendant's claim (see *People v. Fairbank*, *supra*, 16 Cal.4th at pp. 1253-1254), which was supported by nothing more than counsel's one-sentence-long summary thereof (cf. *People v. Nance*, *supra*, 1 Cal.App.4th at p. 1455 [the defendant testified at hearing on motion to withdraw plea]; *People v. Goldman* (1966) 245 Cal.App.2d 376, 380 [the defendant's failure to produce any support except unsworn statements is factor in finding no abuse of discretion in rejection of motion], disapproved on another ground in *In re Smiley* (1967) 66 Cal.2d 606, 626-627; *People v. Brotherton* (1966) 239 Cal.App.2d 195, 202 [taking into account the defendant's failure to file affidavit or declaration in connection with motion, or to offer more than unsworn statement in support]).

Defendant contends Judge Kirihara had a duty to inquire and offer an opportunity to explain, but we disagree. "It is the defendant's burden to produce evidence of good cause by clear and convincing evidence. [Citation.]" (*People v. Wharton* (1991) 53 Cal.3d 522, 585.) If defendant (or defense counsel) felt an examination of the transcript of the change of plea proceedings was insufficient or inadequate, he should have raised

16.

the subject with Judge Kirihara. Judge Kirihara did not abuse his discretion by denying defendant's motion.

## **DISPOSITION**

The judgment is affirmed.

_____
DETJEN, J.

WE CONCUR:

_____
POOCHIGIAN, Acting P.J.

_____
PEÑA, J.

17.