Filed 9/25/20  P. v. Cross CA3
Opinion on transfer from Supreme Court

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| THE PEOPLE, | C087767 |
| Plaintiff and Respondent, | (Super. Ct. Nos. 16F5140 & 17F2259) |
| v. | |
| GARY JOSEPH CROSS, | OPINION ON TRANSFER |
| Defendant and Appellant. | |

After defendant Gary Joseph Cross filed a motion to withdraw his no contest plea, the trial court denied the motion and sentenced him to state prison.  He contends the court abused its discretion by denying the motion, or, alternatively, that the matter should be remanded for the trial court to determine whether he should be granted mental health pretrial diversion under Penal Code section 1001.36.[1]

---

[1]    Undesignated statutory references are to the Penal Code.

1

We originally concluded the trial court did not abuse its discretion by denying defendant's motion to withdraw his plea, and that defendant was not entitled to relief under section 1001.36. We therefore affirmed the judgment.

Our Supreme Court granted review but deferred further action pending disposition in *People v. Frahs* (2020) 9 Cal.5th 618 (*Frahs*). Following its decision in *Frahs*, the court transferred this matter back to us with directions to vacate our decision and reconsider the cause in light of *Frahs*.[2] In *Frahs*, the court found section 1001.36 applies retroactively to defendants whose cases were not yet final when the Legislature enacted section 1001.36. (*Frahs*, at pp. 640-641.) The court further concluded a defendant need only argue he suffers from a qualifying mental disorder to be entitled to a limited remand to allow the trial court to conduct a mental health diversion eligibility hearing. (*Id.* at p. 640.) As we are bound by our Supreme Court's decision in *Frahs*, we will grant a limited remand for the purposes of determining defendant's eligibility for mental health diversion under section 1001.36. Our holding as to defendant's motion to withdraw his plea remains unchanged.

## FACTUAL AND PROCEDURAL BACKGROUND

On September 21, 2016, an information was filed in case No. 16F5140 charging defendant with theft of a vehicle with a prior vehicle theft (Veh. Code, § 10851, subd. (a)/Pen. Code, § 666.5—count 1), receiving a stolen vehicle with a prior vehicle theft (§§ 496d, subd. (a)/666.5—count 2), and misdemeanor possession of a controlled substance (Health & Saf. Code, § 11377, subd. (a)—count 3). As to counts 1 and 2, the information alleged that defendant had previously been convicted of unlawful driving or taking of a vehicle (Veh. Code, § 10851, subd. (a)), a serious or violent felony (§ 1170.12), and had four prior prison terms (§ 667.5, subd. (b)).

---

[2] Neither defendant nor the People filed supplemental briefs on the issue. (Cal. Rules of Court, rule 8.200(b)(1).)

On December 19, 2016, defendant pleaded no contest to count 1 and admitted the prior serious felony and one prison prior in return for a stipulated state prison term of five years.[3]

On April 25, 2017, a felony complaint was filed in case No. 17F2259 charging defendant with unauthorized use of personal information to obtain credit (§ 530.5) and alleging a prior strike conviction and three prison priors. On May 23, 2017, defendant pleaded no contest to misdemeanor identity theft in return for dismissal of the balance of the charging document and a concurrent term.

On July 9, 2018, defendant filed a motion to withdraw his plea in case No. 16F5140. The trial court denied the motion and imposed the stipulated sentences in both cases.

**DISCUSSION**

**1.0    Denial of Motion to Withdraw Plea**

Defendant contends the trial court should have granted his motion to withdraw his plea because the motion sufficiently alleged that his plea—entered on December 19, 2016—was not knowing, voluntary, and intelligent due to the effects of illness, mental health problems, and medications he was taking. We disagree.

---

[3]    The only factual basis for the plea in the record is the trial court's recital of what defendant pleaded to and defendant's affirmative responses. As to count 1, the court stated that according to the information, on or about August 6, 2016, defendant willfully and unlawfully drove or took a 1994 Nissan pickup truck belonging to J.V. without his consent and with the intent to permanently or temporarily deprive him of title to or possession of the vehicle; at that time defendant had a conviction for a prior offense of the same character. As to the remaining allegations, defendant had a prior conviction for arson of property of another, a strike, occurring on or about December 8, 2000, and a prior conviction for unauthorized use of personal identification to obtain credit on or about March 10, 2015, and failed to remain free of prison custody for five years thereafter.

3

## 1.1    *Background*

### 1.1.1    *The Motion*

Defendant's motion asserted the following "factual background," supported by attached exhibits:

After entry of his plea in case No. 16F5140, on February 16, 2017, defendant received a one-month continuance of sentencing "due to a desire to pursue inpatient treatment, and also based on his father's health issues." He received a further one-month continuance to complete a drug treatment program.

On April 24, 2017, defendant was the subject of a newspaper article that described his "lifestyle changes, including completing outpatient drug treatment and maintaining his sobriety." The next day, he was charged in case No. 17F2259.

On May 17, 2017, shortly before he entered a misdemeanor plea in his second case, he saw Walter Fletscher, M.D., because he anticipated extensive dental work before his incarceration and because he felt shortness of breath and chest discomfort. On May 19, 2017, Dr. Fletscher wrote a letter indicating that defendant's testing was abnormal and suggested coronary artery disease.

On May 23, 2017, when defendant entered his misdemeanor plea in the second case, he advised the trial court he might need to have his sternum cut open, requiring a longer recovery time. On May 25, 2017, he had an appointment for cardiac catheterization, a procedure to check for arterial blockages. On June 12, 2017, Dr. Fletscher wrote that a treatment plan was being devised, but more time would be needed to complete testing and evaluation.

On July 25, 2017, defendant did not appear for sentencing because he had been taken into custody and transported to San Diego on a warrant. On July 31, 2017, the Shasta County Public Defender's Office received documents indicating defendant had an appointment on August 2, 2017.

4

On August 7, 2017, Dr. Fletscher wrote a letter stating defendant had an issue with his right coronary artery originating from the left coronary artery, and a surgeon had opined defendant needed surgery as soon as possible.

On September 22, 2017, defendant appeared in court, but had severe medical issues related to his open-heart surgery; he needed to leave court to lie down. His case was reset for an October plea date.

On October 24, 2017, defendant appeared in court, but was still very ill. He had two upcoming appointments with cardiologists.

On November 22, 2017, defendant underwent a clinical assessment at Tehama County Health Services Agency, during which he reported a lifelong history of physical abuse, neglect, sexual abuse, and domestic violence. At age six he was diagnosed with attention deficit hyperactivity disorder (ADHD) and given a prescription for medication and had taken psychiatric medications on and off since then. According to his wife, he constantly felt on edge and unable to sit still or concentrate, had regular nightmares, and suffered from irritability, outbursts of anger, uncontrollable worries and fears, emotional reactivity and poor impulse control, and depression. He had difficulty making decisions and relied on his wife for help with paperwork and remembering details because he felt his mind was " 'always going' " and he could not remember anything. All of his psychiatric symptoms had intensified since his recent surgery.

On December 5, 2017, defendant requested a four-month continuance for further surgery.

On January 2, 2018, Gateway Medical Center gave defendant a list of his current medications, including several that have "mental side effects." This list included Albuterol, lithium carbonate, Ranitidine, Ambien, Hydroxyzine, Duloxetine, Dantrolene

Sodium, Baclofen, Gabapentin, Oxycodone, Ibuprofen, "[n]icotine patch," Atorvastatin, Lisinopril, and "Bayer."[4]

On March 5, 2018, defendant was diagnosed with posttraumatic stress disorder (PTSD), which was consistent with the psychiatric symptoms described in the clinical assessment. Due to defendant's aggressive conduct after his previous surgery, the surgeon was refusing to perform the further operations defendant needed.

On June 5, 2018, defendant provided a letter from a doctor indicating that his medical team would need at least two years to complete all the procedures and surgeries defendant needed; furthermore, his mental health issues had delayed his treatment program. Defendant was given approximately one month's further continuance of sentencing.

"On information and belief, [defendant] has been quoted by his team of doctors as only having 10 years left to live, optimistically."

Based on these alleged facts, defense counsel asserted there was clear and convincing evidence of good cause to withdraw the plea. When defendant entered the plea he was unaware of the above physical and mental problems; he was " 'an entirely different person' " now. The PTSD diagnosis was a particular cause for concern, since that condition "would tend to interfere with [defendant's] thinking, memory, and ability to think rationally and work with his attorney productively."

Counsel asserted further that the complete list of defendant's medications, which had not been fully available to counsel before the entry of plea, showed that many of

---

**4** The purpose of some of the medications is not stated, and none of their alleged side effects are described.

them "cause drowsiness or otherwise impact mood and cognition," and some "are intended to correct mental imbalances such as depression and bipolar disorder."[5]

According to counsel, "[h]ad [defendant] known of his latent physical and mental health diagnoses, he would have pursued different avenues with his defense. He would have been better able to assist counsel in preparing his defense, he would have been able to make informed, coherent choices about whether to resolve his case, and had he been in his right mind and aware of the reduced life expectancy and complex care needs he faces with his medical prognosis, he would have almost certainly chosen to go to trial and fight to avoid a prison sentence."

Defendant attached a supporting declaration, averring: "At the time of my change of plea on December 19, 2016, I was not aware that I would subsequently be diagnosed with a serious heart condition as well as need to receive treatment for mental health issues (PTSD) in connection with my heart condition. [¶] . . . At that time I was also not aware that I would only have approximately 10 years to live according to my doctors. [¶] . . . Had I known this, I would not have changed my plea on December 19, 2016 under the terms set forth in the plea agreement and would instead have insisted on either different terms or a trial by jury in these matters."

### 1.1.2  *The Opposition*

The People opposed the motion, asserting defendant had shown neither good cause to withdraw his plea nor prejudice from not being allowed to do so.

### 1.1.3  *The Hearing on the Motion*

The trial court stated the following tentative ruling: "There is nothing in the motion which relates [defendant's declaration] back to the time of the entry of plea, or any of these things were [a]ffecting [defendant's] ability to understand, not only the

---

[5]    Counsel did not specify which medications could cause these problems or provide any supporting documentation.

offense, the rights which he gave up or the consequences of his plea, such that this would be a matter that would fall within [section] 1018, and withdraw[al] of the plea. [¶] In fact from everything else I [gather] there was no way for him or anyone else to know. So it does not provide, at least in my mind, the—as a trigger, types of things which would allow that."

Defense counsel argued that defendant's ongoing mental health issues, which were so serious that they prevented defendant from obtaining necessary medical care, were the weightiest ground to withdraw the plea.

The trial court responded that defendant had not provided any expert opinion that any condition described in the motion was present at the time of the plea. Thus, it appeared that the PTSD and defendant's "stabilizing medications" all postdated the plea "and is more related to the first surgery and the recovery from that surgery versus anything that has been related back to the time of the entry of plea."

The trial court adopted its tentative ruling and denied the motion.

1.2     *Analysis*

A guilty plea may be withdrawn at any time before judgment for good cause shown. (§ 1018.) " 'Good cause' means mistake, ignorance, fraud, duress or any other factor that overcomes the exercise of free judgment and must be shown by clear and convincing evidence." (*People v. Ravaux* (2006) 142 Cal.App.4th 914, 917.) The grant or denial of a motion to withdraw a plea is within the trial court's sound discretion and will be reversed only for abuse of discretion. (*Ibid.*) In reviewing the trial court's ruling, we must accept the court's factual findings if supported by substantial evidence. (*Ibid.*)

Here, substantial evidence supports the trial court's factual finding that defendant did not suffer from any condition at the time of his plea that could have overcome his exercise of free judgment. As the court observed, defendant put on no evidence that he had been diagnosed with PTSD or prescribed any medication alleged to be capable of interfering with his ability to think, reason, and cooperate with counsel until well after the

8

entry of plea. (Furthermore, as noted, defendant's motion did not even identify which of his medications could have such effects.)

On appeal, defendant tries to make up for his failure of proof in several ways. All are unavailing.

To show he was suffering from conditions that could have overcome his free judgment when he entered his plea, defendant points to statements in the Tehama County Health Services Agency clinical assessment (prepared long after his plea) which indicate that he "was badly beaten with a baseball bat and left for dead after a sporting event in 2011; . . . was frequently abused as a child; suffers from ADHD; and had taken psychiatric medication as recently as 2011." According to the assessment form, these statements all stem from defendant's self-reporting, and nothing on the single page of the form attached to defendant's motion (said to be "[p]age 1 of 4") shows whether any attempt was made to verify them. But even if we assume them to be true, they do not meet defendant's burden. Defendant does not explain how events occurring no later than 2011 could affect his ability to enter a knowing, voluntary, and intelligent plea in December 2016; nor does he cite any authority holding that ADHD, without more, could do so.[6]

Defendant also points to his substance abuse treatment, which began before he entered his plea. But defendant cites no authority holding that substance abuse in itself proves incapacity to enter a knowing, voluntary, and intelligent plea, and we know of none.

---

[6]    Defendant attempts to present evidence as to his alleged conditions and their effects by citing to materials that were not before the trial court and have not been proffered to this court by a motion to take new evidence or a request for judicial notice. We do not consider such materials. (See *In re K.P.* (2009) 175 Cal.App.4th 1, 5 [sources cited only in an appellate brief not evidence on appeal].)

9

Lastly, defendant asks in a footnote: "Who knows what other evidence of [defendant's] medical and mental health conditions there would have been had a probation report been done prior to sentencing[?]" Such speculation is not grounds for reversal.

In any event, the transcript of defendant's plea agreement hearing itself constitutes substantial evidence that he entered his plea knowingly, voluntarily, and intelligently.

The trial court asked whether defendant had read and understood whatever he initialed on the written plea form; defendant said, "Yes." The court asked whether defendant had discussed any questions with counsel and whether counsel could answer them; defendant said, "Yes." The court asked if once defendant had an understanding of what was in the form, he had signed and dated the form; defendant said, "Yes, sir."

The trial court observed: "There's a part of the form that's a bit ambiguous and one that was not initialed. [¶] So let me ask first, are Counsel of the opinion that the plea could result in permanent exclusion from CalWORKs, food stamps, or general assistance?" Defendant said: "I refuse to sign then." Defense counsel added: "I don't think so. And so that's why we X'd it out, Your Honor."

The trial court stated that if this condition applied, it would not be ordered by the court but would be imposed by statute or regulation, and the court did not know whether Vehicle Code section 10851 had that effect. The point needed to be resolved now, because if the statute did require that condition and defendant refused to sign it, the court could not accept his plea.

The trial court noted another condition defendant had not initialed (paragraph 24), setting out his constitutional rights and his acknowledgment that entry of plea waived them. Defendant asked if he could speak with the court. The court said he could not unless his counsel had discussed it with him first.

Defendant and counsel conferred off the record.

10

The trial court stated: "So, Mr. Cross, what we are going to assume going forward is, No. 1, that this is not an offense which would exclude you from benefits. And that if it were, it would be something that would allow you to withdraw from the plea agreement, okay?" Defendant said: "Okay." The court asked: "Make sense?" Defendant said: "Yes."

The trial court confirmed that defendant had now initialed and understood paragraph 24.

The trial court asked whether defendant understood the charges and enhancements he was pleading to and what it took to prove them, whether he had discussed potential defenses with counsel, and whether he understood that he was agreeing to a five-year stipulated term in state prison, "with other fines and fees imposed, and those consequences which you initialed." Defendant answered "Yes" to each question.

The trial court asked defendant whether anyone had tried to get him to enter his plea by promises or threats; defendant said, "No." The court asked: "And you are thinking clearly about the plea and the consequences; is that true?" Defendant said, "Yes."

The trial court then obtained defendant's no contest plea to each count and allegation in the plea agreement, and counsel's stipulation to the factual basis for the plea. Having done so, the court found the plea, admissions and waiver were "free and voluntary, with a knowing and intelligent waiver of rights."[7]

Unlike many plea hearings where a defendant simply answers "yes" or "no" when called on, here defendant not only gave appropriate responses but played an active and

---

[7] As defendant points out, the trial court failed to ask defendant whether he was taking any medication that might impair his ability to enter a knowing, voluntary, and intelligent plea. However, defendant does not cite any authority holding that this omission is enough to invalidate the court's finding, which was based on the court's observation of defendant's responses and demeanor throughout the hearing.

11

productive part in the proceedings. He objected to a supposed plea term and got the trial court to resolve the question by stating tentatively that the term did not apply, or that if it did he could withdraw the plea. He sought to engage the court directly on another point. He conferred with counsel in response to a question raised by the court. He then initialed a term he had left blank before. Only after all this did the court ask whether defendant understood the plea and whether he had been improperly induced to enter it. There is simply nothing in this record that suggests any impairment of defendant's will or intelligence.

Defendant has failed to show that the trial court abused its discretion by denying his motion to withdraw his plea.

## 2.0 Pretrial Mental Health Diversion

Defendant alternatively asks us to remand the matter so the trial court can determine whether he is eligible for pretrial diversion due to a specified mental disorder under the recently enacted section 1001.36, which he argues is retroactive as to all cases not yet final. Originally, we agreed with those cases finding that section 1001.36 did not apply retroactively to nonfinal cases. However, pursuant to our Supreme Court's decision in *Frahs*, we now conclude defendant is entitled to a limited remand to the trial court for a determination of his eligibility for mental health diversion under section 1001.36. (*Frahs, supra,* 9 Cal.5th at pp. 640-641.)

Section 1001.36, which went into effect before defendant's judgment will become final on appeal (Stats. 2018, ch. 34, § 24, eff. June 27, 2018), provides pretrial diversion may be granted if the trial court finds all of the following criteria are met: (1) the defendant suffers from a recently diagnosed mental disorder enumerated in the statute;[8]

---

[8]     Section 1001.36, subdivision (b)(1) provides, in pertinent part: "Pretrial diversion may be granted pursuant to this section if all of the following criteria are met: (A) The court is satisfied that the defendant suffers from a mental disorder as identified in the

(2) the disorder was a significant factor in the commission of the charged offense, and that offense is not one of the offenses enumerated in subdivision (b); (3) "[i]n the opinion of a qualified mental health expert, the defendant's symptoms of the mental disorder motivating the criminal behavior would respond to mental health treatment"; (4) the defendant consents to diversion and waives his right to a speedy trial; (5) the defendant agrees to comply with treatment as a condition of diversion; and (6) the defendant will not pose an unreasonable risk of danger to public safety, as defined in section 1170.18, if treated in the community. (§ 1001.35, subd. (b)(1)-(2).) If the treatment under pretrial diversion is deemed successful, the charges shall be dismissed and the defendant's criminal record expunged. (§ 1001.36, subds. (b)(1)(A)-(C), (c)(3), (e).)

The statute further provides: "At any stage of the proceedings, the court may require the defendant to make a prima facie showing that the defendant will meet the minimum requirements of eligibility for diversion and that the defendant and the offense are suitable for diversion. The hearing on the prima facie showing shall be informal and may proceed on offers of proof, reliable hearsay, and argument of counsel. If a prima facie showing is not made, the court may summarily deny the request for diversion or grant any other relief as may be deemed appropriate." (§ 1001.36, subd. (b)(3).)

In *Frahs*, our Supreme Court concluded *Estrada*'s inference of retroactivity applies to section 1001.36 such that defendants with qualifying mental disorders whose cases are not yet final are entitled to limited remand for the trial court to determine whether they are eligible for mental health diversion. (*Frahs, supra,* 9 Cal.5th at pp. 624-625; see *In re Estrada* (1965) 63 Cal.2d 740.) The "possibility of being granted mental health diversion rather than being tried and sentenced 'can result in dramatically different

most recent edition of the Diagnostic and Statistical Manual of Mental Disorders, including, but not limited to, bipolar disorder, schizophrenia, schizoaffective disorder, or post-traumatic stress disorder, but excluding antisocial personality disorder, borderline personality disorder, and pedophilia."

13

and more lenient treatment.' " (*Frahs*, at p. 631, quoting *People v. Superior Court* (*Lara*) 4 Cal.5th 299, 303.)  As the court explained, "the impact of a trial court's decision to grant diversion can spell the difference between, on the one hand, a defendant receiving specialized mental health treatment, possibly avoiding criminal prosecution altogether, and even maintaining a clean record, and on the other, a defendant serving a lengthy prison sentence." (*Frahs*, at p. 631.)  Thus, "the ameliorative nature of the diversion program places it squarely within the spirit of the *Estrada* rule," and the program retroactively applies to defendants whose cases are not yet final.  (*Ibid*.)  That is the case for defendant here.

Furthermore, the record shows a clinical assessment in which defendant reported being diagnosed with ADHD as a very young child, and taking prescribed medication for the condition.  He had taken psychiatric medications on and off since his ADHD diagnosis.  Defendant was later diagnosed with PTSD, which was consistent with the psychiatric symptoms described in the clinical assessment.

Given the above evidence, defendant apparently meets at least the first threshold requirement for eligibility for mental health diversion--he suffers from a qualifying mental disorder (ADHD & PTSD).  (§ 1001.36, subd. (b)(1)(A); *Frahs, supra*, 9 Cal.5th at p. 640.)  A conditional remand for the trial court to conduct a mental health diversion eligibility hearing is therefore appropriate under the circumstances.

## DISPOSITION

We conditionally reverse defendant's judgment and remand to the trial court for an eligibility determination under section 1001.36.  If the trial court finds that defendant suffers from a mental disorder, does not pose an unreasonable risk of danger to public safety, and otherwise meets the six statutory criteria (as nearly as possible given the postconviction procedural posture of this case), then the court may grant diversion.  If defendant successfully completes diversion, then the court shall dismiss the charges.

However, if the court determines that defendant does not meet the criteria under section 1001.36, or if defendant does not successfully complete diversion, then his convictions and sentence shall be reinstated.

                                              /s/
                                              BUTZ, J.*


We concur:


 /s/
RAYE, P. J.


 /s/
HULL, J.

---

* Retired Associate Justice of the Court of Appeal, Third Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

15